UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MICHAEL MUEHLEISEN,

                        Plaintiff,           12-cv-1182(MAT)

                v.                         **DECISION**
                                                    **and ORDER**
CAROLYN W. COLVIN, Commissioner
of Social Security,

                        Defendant.

_____

## INTRODUCTION

Plaintiff Michael Muehleisen ("Plaintiff"), who is represented by counsel, brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c). Presently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. ##8, 9.

## BACKGROUND

On January 21, 2010, Plaintiff filed applications for DIB and SSI alleging that he was disabled beginning January 1, 2000, due to left shoulder injury, nerve damage, and neck injury. T. 155-65, 187-88. Those applications were denied on May 18, 2010, and Plaintiff subsequently requested a hearing before an Administrative Law Judge ("ALJ"). T. 73-80, 83-85. Plaintiff's video hearing was

conducted before ALJ Roxanne Fuller on August 22, 2011. T. 40-64. Independent Vocational Expert ("VE") Dian L. Haller also testified at the hearing. T. 59-63.  The ALJ issued a written decision on September 7, 2011, finding that Plaintiff was not disabled. T. 19-39.

In applying the familiar five-step sequential analysis, as contained in the administrative regulations promulgated by the SSA, see 20 C.F.R. §§ 404.1520, 416.920; Lynch v. Astrue, No. 07-CV-249, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps), the ALJ found: (1) Plaintiff had not engaged in substantial gainful activity since the alleged onset date; (2) he had the severe impairments of degenerative disc disease, multi-level spondylosis, and facet osteoarthrosis; (3) his impairments did not meet or equal the Listings set forth at 20 C.F.R. 404, Subpart P, Appendix 1, and that Plaintiff retained the residual functional capacity ("RFC") to perform light work with varying limitations in pushing and pulling, climbing, stooping, reaching, handling, gross manipulation, and fine manipulation; (4) Plaintiff could not perform his past relevant work as a material handler, roofer, and construction worker; and (5) Plaintiff was not disabled as he was capable of making an adjustment to other work existing in significant numbers in the national economy. T. 24-35.

The ALJ's determination became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request

for review on October 2, 2012. T. 1-6. Plaintiff then filed this timely action. Dkt.#1.

Plaintiff moves for judgment on the pleadings on the following grounds: (1) the ALJ erred when he found Plaintiff's mental impairments non-severe; (2) the RFC determination was erroneous; (3) the ALJ applied the improper legal standard in assessing Plaintiff's credibility; and (4) the testimony of the VE did not constitute substantial evidence. Pl. Mem. (Dkt.#9-1) 10-20. The Commissioner also moves for judgment on the pleadings on grounds that the ALJ's decision is correct and is supported by substantial evidence. Comm'r Mem. (Dkt.#8-1) 15-19.

For the following reasons, Plaintiff's motion is denied and the Commissioner's motion is granted.

## DISCUSSION

### I.   General Legal Principles

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405(g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007). The section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such

3

findings are supported by substantial evidence in the record. Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see also Metro. Stevedore Co. v. Rambo, 521 U.S. 121, 149 (1997).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). Section 405(g) limits the scope of the Court's review to two inquiries: determining whether the Commissioner's findings were supported by substantial evidence in the record as a whole, and whether the Commissioner's conclusions are based upon an erroneous legal standard. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003); see also Mongeur, 722 F.2d at 1038 (finding a reviewing court does not try a benefits case de novo).

Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642

(2d Cir. 1988). A party's motion will be dismissed if, after a review of the pleadings, the Court is convinced that the party does not set out factual allegations that are "enough to raise a right to relief beyond the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

## II.  Medical Evidence

### A.    Treatment for Physical Impairments

On August 27, 2009, Plaintiff was evaluated by treating physician Michael J. Ostempowski, M.D., who noted a history of back pain and trouble with the left shoulder dating back 8 to 10 years. T. 251. Dr. Ostempowski observed muscle atrophy in Plaintiff's upper left extremity, with "reasonably good strength" in the left shoulder and intact distal neurovascular status was intact. Id. A left shoulder x-ray showed significant cervical spinal disease but no significant bony pathology. Id.

Plaintiff underwent an EMG/nerve conduction study in September 2009, which revealed a moderate-to-marked degree of old denervation in nearly every muscle of the left upper extremity. T. 241. The reviewing neurologist, Valerie Vullo, M.D., reported that there appeared to be some acute/ongoing denervation in the left biceps, but not in any other muscles, which could possibly be caused by multilevel cervical radiculopathy or polyneuropathy. Id.  An MRI two days later showed severe multilevel spondylosis and facet osteoarthrosis, reversal of normal lordosis C3-7, and pronounced

disc disease at the C5-6 disc level where there was a large midline focal spondylitic protrusion indenting the thecal sac and mildly flattening the ventral cord and severe bilateral foraminal stenosis. T. 247.

At a follow-up examination on September 24, 2009, Dr. Ostempowski noted that Plaintiff had muscle atrophy, but good range of motion of his left shoulder. T. 249. He recommended that Plaintiff see a spine surgeon for evaluation. Id.

Orthopedic surgeon Anthony Leone, M.D., examined Plaintiff on October 2, 2009, for neck and left arm pain. T. 267. Plaintiff had full strength, sensation, and reflexes in the upper extremities and full digital motion and full range of motion in his hands bilaterally. T. 268. He had good rotation of his neck and some atrophy of the left upper arm. Id. Dr Leone recommended ibuprofen, a muscle relaxant, and physical therapy to strengthen and stabilize the cervical spine. Id.

Plaintiff received physical therapy for his cervical spine and left upper extremity radiculopathy from October 9 through November 27, 2009. During that time, he attended four sessions, failed to appear at two sessions, and cancelled three sessions. T. 257. The physical therapist noted that while his cervical range of motion had increased, his symptoms remained the same. Id.

On December 2, 2009, Dr. Leone noted that on examination Plaintiff had "a fairly good" range of motion. He recommended an epidural steroid injection for Plaintiff's continued pain. T. 266.

Plaintiff received an epidural steroid injection in his cervical spine on December 23, 2009, and another injection in his lumbar spine on January 27, 2010. Both procedures were tolerated well. T. 264, 279.

Internist Nikita Dave, M.D., consultatively examined Plaintiff on May 3, 2010. Plaintiff complained of neck pain for the past year and reported a history of seizures. He stated that he cooked, took care of personal needs, watched television, listened to the radio, read, and spent time with his friends daily. T. 327. Upon examination, Plaintiff had reduced range of motion of the cervical spine with full range of motion in the lumbar spine and negative straight leg raising test. T. 329. He had reduced range of motion and atrophy of his left shoulder and near full strength in the left upper extremity. Id.

Dr. Dave opined that Plaintiff had moderate to severe limitations for repetitive gross motor manipulation through the left upper extremity, particularly the shoulder; should not lift, carry, push, or pull anything greater than light objects; and should avoid repetitive turning, twisting, and sudden repetitive movements of the cervical spine. Id. The doctor added that Plaintiff should not climb ladders, work around heights, or work

7

with heavy or dangerous equipment due to his reports of seizures, which she noted he had never been tested or treated for. T. 327, 330.

Plaintiff saw Dr. Chinnah Ramgopal in June, 2010 for left shoulder and left-side neck pain. Dr. Ramgopal prescribed Lortab for Plaintiff's pain. T. 399-400.

Dr. Leone completed a Physical Residual Functional Capacity Questionnaire in October, 2010, in which he stated that Plaintiff's pain would frequently interfere with the attention and concentration needed to perform simple work tasks. T. 351. He opined that Plaintiff could tolerate moderate stress, could sit/stand/walk less than 2 hours in an 8-hour workday, and that Plaintiff needed a job that permitted him to shift positions at will from sitting to standing to walking. Id. Plaintiff could frequently lift less than 10 pounds and occasionally lift up to 10 pounds. Id. The doctor further indicated that Plaintiff could occasionally twist, stoop, crouch, and climb stairs, and rarely climb ladders, and could be absent more than four days per month. Id. Dr. Leone noted that he had not seen Plaintiff in about 6 months. Id.

An April 29, 2011 MRI of Plaintiff's cervical spine showed "multilevel and multifactorial encroachment on the thecal sac that causes mild C5-C6 as well as C6-C7 central stenosis and C5-C6 flattening of the cord's ventral margin." T. 403. The study also

revealed "multiple levels of severe foraminal compromise as described and multilevel recess encroachment that is most significant and severe at C6-7 on the left." Id.

Dr. Leone recommended cervical fusion surgery for Plaintiff on July 20, 2011.[1] T. 410. Two days later, an MRI of Plaintiff's left shoulder indicated "significant edema within the proximal humeral metaphysis and diaphysis, cannot exclude insufficiency fracture or other pathology, correlation with x-rays and nuclear medicine bone scan suggested." T. 412. The study also showed a 12mm intraosseous cyst of the anatomic neck of the humerus, and a complex ganglion cyst extending superiorly from the spinoglenoid notch. T. 413.

In August, 2011, Dr. Ramgopal noted that Plaintiff had no masses in his neck and no edema, and refilled Plaintiff's prescription for Lortab. T. 499.

**B.    Mental Health Treatment**

Plaintiff was consultatively examined by psychologist Alan Dubro, Ph.D., on May 3, 2010, during which he reported that pain medication helped his neck pain to a limited extent, and that the pain exacerbated his depression and irritability. T. 321. A transient ischemic attack four years prior left him with weakness in his left arm. Id. He also reported a history of alcohol abuse. Id. Plaintiff's mental examination was largely unremarkable, save

---

[1] Plaintiff had not yet had his surgery by the date of the disability hearing. T. 47.

for impaired concentration and memory secondary to cognitive processing difficulties, and he struggled with simple multiplication and division problems. T. 320-23. Dr. Dubro opined that Plaintiff could follow and understand simple instructions and that his concentration and attention were moderately impaired. T. 323. Plaintiff would have moderate difficulties in learning new tasks, could perform daily tasks independently on a regular basis, would have moderate difficulties in performing complex tasks independently, would have some difficulty in interacting with others, and would have moderate difficulties in his ability to regularly attend to a routine and maintain a schedule. Id.

On May 17, 2010, Dr. Cheryl Butensky, a state agency psychological consultant reviewed the evidence of record and opined that Plaintiff had moderate limitations in the following work-related areas: (1) ability to understand, remember, and carry out detailed instructions, (2) maintain attention and concentration for extended periods, (3) perform activities within a schedule, (4) work in coordination with others without being distracted, (5) complete a normal workday and workweek without interruptions from psychologically-based symptoms, (6) interact appropriately with the general public, (7) accept instructions and respond appropriately to criticism, (8) respond appropriately to changes in the work setting, (9) be aware of normal hazards, and (10) set realistic goals or make plans independently of others. T. 346-47.

Dr. Butensky opined that Plaintiff could perform simple job tasks, sustain attention and concentration for simple tasks, had mild-to-moderate limitations in his ability to interact appropriately with coworkers and supervisors, and adapt to changes in a routine work setting. She indicated that Plaintiff would not be significantly limited in every other area. T. 346-47.

Plaintiff was also treated for alcohol and marijuana abuse at Sisters of Charity Hospital from February through July, 2011. T. 417-97. There, he reported that he fished, bowled, camped, hunted, went bird watching, and picked flowers and made floral arrangements. T. 436, 438. He indicated that he spent time with his family and his girlfriend daily, and that he was interested in computer training. T. 436-38. The attending physician reported that Plaintiff's cognitive functioning was normal, he was fully oriented, and communicated well with appropriate behavior and affect. T. 437.

III. **<u>Non-Medical Evidence</u>**

Plaintiff alleged that he became unable to work on January 1, 2000, due to a left shoulder injury, nerve damage, and neck injury. T. 187. He previously worked as a truck loader and roofer from 1997 through 2007. Plaintiff is a high school graduate. T. 44.

In a Function Report form, Plaintiff stated that he lived alone in his apartment, watched television, read, socialized with friends and family, and cared for his pets, and had some

difficulties with his personal needs.  T. 198-203. He indicated that he had problems paying attention due to pain, but could follow spoken and written instructions, and had no problem getting along with people. T. 204.

Plaintiff testified at his disability hearing that his average pain level in his neck and shoulder was 9 out of 10. T. 47. Dampness, rain, and cold exacerbated his pain. T. 50. He stated that Lortabs "don't really seem to work," and that physical therapy "didn't work at all." Id. Plaintiff told the ALJ that he would need to change positions from sitting to standing every hour, could walk about one hour before needing rest, and could lift about 10 pounds. T. 52-3. Plaintiff's girlfriend or sister would occasionally help him with chores, cooking, grocery shopping, and laundry. T. 55.

The ALJ also heard testimony from VE Dian L. Haller. T. 59-64. She posed a hypothetical regarding an individual of Plaintiff's age, work experience, and education, who could perform light work with the following limitations: (1) never pushing or pulling with the left arm and frequently pushing or pulling with the right dominant arm; (2) occasionally climbing ramps or stairs; (3) occasionally stooping; (4) never climbing ladders, ropes, or scaffolds; (5) never reaching overhead with the left arm and frequently reaching overhead with the right arm; and (6) occasionally handling and fingering objects with the left hand and frequently handling and fingering objects with the right hand.

12

T. 60-61. The VE responded that such an individual could perform work as a gate guard, rental clerk, and usher. T. 61-62.

The ALJ posed a second hypothetical that involved the same facts except the individual could occasionally push/pull with the right arm, occasionally reach and reach overhead with the right arm, never handle or finger objects with the left hand, and occasionally handle and finger objects with the right hand. T. 62. In response, the VE stated that the individual could not perform any jobs, and further testified that if the individual required unscheduled breaks two to three times per day at 10 minutes each time, the individual could not perform work in the national economy. T. 63.

## IV.  The Decision of the Commissioner that Plaintiff was not disabled is supported by substantial evidence.

### A.  Severity of Impairment

The Act defines disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998).

Plaintiff first contends that the ALJ erred when he found Plaintiff's mental impairments non-severe. Pl. Mem. 10-13. For an impairment to be considered severe, it must more than minimally limit the claimant's functional abilities, and it must be more than a slight abnormality. 20 C.F.R. § 416.9249(c). Further, the

13

Regulations provide that where a claimant has alleged multiple impairments, the ALJ is obligated to consider the disabling effect of the combination of the impairments without regard to whether any one impairment, if considered separately, would be disabling. See 20 C.F.R. §§ 404.1523, 416.923; see also §§ 404.1569a(d), 416.969(a) (discussing combined exertional and nonexertional limitations); Dixon v. Shalala, 54 F.3d 1019, 1031 (2d Cir. 1995). "In such instances, it is the duty of the [ALJ] to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled." Bowen v. Heckler, 748 F.2d 629, 635 (11th Cir. 1984), quoted in Costanzo v. Apfel, 2000 WL 575660, at *3 (W.D.N.Y. Feb. 8, 2000).

Here, the ALJ found that Plaintiff's medically determinable mental impairments of substance abuse, mood disorder, and cognitive disorder, considered singly and in combination, did not cause more than minimal limitation in his ability to perform basic mental work activities and were therefore non-severe. T. 24. Substantial evidence in the record supports the ALJ's determination.

At the outset, the Court points out that the ALJ incorrectly determined that "the record supports that the claimant's substance abuse is in remission." T. 24. Treatment notes from Sisters of Charity indicate that he used illicit substances sporadically throughout his chemical dependency treatment, and he testified at

14

his hearing on August 22, 2011 that he drank two beers the night before but had been "good on the drinking" prior to that. T. 56, 417-96. Other reports assess Plaintiff as being in partial remission. T. 324, 327, 512. This is indicative that Plaintiff's substance abuse not in full remission as stated. Nonetheless, because the record indicates this impairment imposed no more than minimal limitation on Plaintiff's ability to perform work-related activities, the ALJ properly found that neither Plaintiff's testimony nor the medical evidence indicates significant work-related limitations due to mental impairments. T. 24-25.

At the time of his consultative examination with Dr. Dubro, Plaintiff had never received any psychiatric treatment. T. 320. His own statements indicate that his limitations in daily living were primarily due to his physical impairments. T. 55, 199-205, 320-25. With regard to his activities of daily living, Plaintiff reported that he socialized, took public transportation, watched television, read, and took care of most of his personal needs. T. 199-205, 323. Dr. Dubro's assessment of cognitive disorder is not otherwise supported by the record, was based upon a one-time evaluation, and appears to have relied heavily on Plaintiff's self-report of symptoms. To that end, the ALJ rejected the restrictive opinions of the consultative psychological examiner and the state agency review physician, which she was entitled to do. Neither Dr. Dubro nor Dr. Butensky was a treating physician, and as such their opinions

were not entitled to any special weight. See 20 C.F.R. § 404.1527(c)(2).

The ALJ also properly applied the special technique to be followed when dealing with mental impairments. See 20 C.F.R. § 404.1520a. In considering the four broad functional areas, she noted that Plaintiff had strong activities of daily living, which included self-care, socializing, and engaging in hobbies. T. 25. With respect to social functioning, Plaintiff stated that he becomes easily irritated and annoyed due to his pain, however he spends the majority of his time with his girlfriend, family, and friends. Id. The ALJ acknowledged that Plaintiff had mild limitations in maintaining concentration, persistence, or pace, and had no episodes of decompensation of extended duration. Id. In employing the so-called "special technique," the ALJ found that Plaintiff's mental impairments caused no more than mild limitations in any of the first three functional areas and no episodes of decompensation, commanding a finding of non-severe impairments. This is contrary to Plaintiff's assertion that "the ALJ did not consider any mental impairments throughout the evaluation . . . ." Pl. Mem. 11. The ALJ's omission of further consideration of Plaintiff's non-severe mental impairments at the RFC stage thus amounts to harmless error. See Insel v. Colvin, Civil Action No. 5:13-903, 2014 WL 4804282, at *9 (N.D.N.Y. Sept. 26, 2014).

Based on the evidence cited above and in the record as a whole, the ALJ's finding that Plaintiff's mental impairments were not severe was supported by substantial evidence.

**B.    Treating Source Opinion**

Plaintiff next contends that the ALJ erred in giving no weight to the opinion of treating physician Dr. Leone. Pl. Mem. 13-17.

Under the Commissioner's regulations, a treating physician's opinion is entitled to controlling weight, provided that it is well-supported in the record:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 416.927(d)(2); 20 C.F.R. § 404.1527(d)(2). However, "[w]hen other substantial evidence in the record conflicts with the treating physician's opinion ... that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (citing 20 C.F.R. § 404.1527(d)(4)).

When an ALJ refuses to assign a treating physician's opinion controlling weight, he must consider a number of factors to determine the appropriate weight to assign, including: (i) the

frequency of the examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. See 20 C.F.R. § 404.1527(c). The Second Circuit recently held that it does not require a "slavish recitation of each and every factor [provided in 20 C.F.R. § 404.1527(c)] where the ALJ's reasoning and adherence to the regulation are clear." Atwater v. Astrue, No. 12-902-cv, 512 Fed. Appx. 67 (2d Cir. Feb. 21, 2013) (unpublished opinion).

In rejecting Dr. Leone's functional limitations assessment, the ALJ reasoned that it was "inconsistent with the claimant's objective medical record . . . and his ability to perform his activities of daily living." T. 33.

Prior to concluding that Dr. Leone's RFC limitations were too restrictive, she engaged in a thorough discussion of the medical evidence, noting Dr. Leone's own examination findings, which included: (1) full neck extension and almost full flexion bringing his chin down to his chest and full rotation to the right and 45-degree rotation to the left; (2) 1 inch of atrophy in the left upper arm as compared to the right; (3) 140 degrees of forward flexion and abduction in the shoulder (normal range of motion);

(4) strength, sensation, and reflexes in the upper extremities were otherwise normal; (5) full digital motion and full range of motion in the hands; (6) "fairly good" range of motion at a follow-up appointments, with subjective complaints of pain; and (7) administration of an epidural steroid injection with no complications. T. 29-30. The doctor also prescribed a conservative course of treatment that included ibuprofen, muscle relaxants, and physical therapy. T. 29. These notes are inconsistent with his finding that Plaintiff's neck movements were restricted to occasional looking up/down, turning left or right, and holding the head in a static position. T. 353.

Likewise, Dr. Leone's opinion that Plaintiff was limited in fingering, reaching, and handling on the right side was inconsistent with the objective medical evidence, such as x-rays showing normal findings in the right hand and MRI and EMG testing revealing a markedly abnormal study in the left upper extremity. T. 251, 306. Even though the ALJ found Dr. Leone's RFC limitations unduly restrictive, she accounted for Plaintiff's "well-documented" left arm pain and therefore tailored his RFC to reflect limitations in pushing/pulling with the left arm, occasional climbing of ramps or stairs, occasional stooping, never climbing ladders/ropes/scaffolds, never reaching or overhead reaching with the left arm, and only occasional handling of objects with the left hand. T. 31, 32. Finally, the opinion of the physical consultative

examiner noted moderate-to-severe limitations for repetitive gross motor manipulation through the upper left extremity and restrictions pushing or pulling with the left arm. T. 31, 330. This opinion was accorded some weight by the ALJ, and was properly relied upon in determining Plaintiff's RFC.

Here, the ALJ applied the appropriate legal standards when she considered the full record and properly evaluated Plaintiff's treating source opinions. Thus, her decision was based upon substantial evidence.

### C.   Plaintiff's Credibility

Plaintiff argues that the ALJ failed to apply the appropriate legal standards set forth in Social Security Ruling ("SSR") 96-7p and 20 C.F.R. §§ 416.929, 404.1429 in assessing his credibility. Pl. Mem. 17-20.

To establish disability, there must be more than subjective complaints. There must be an underlying physical or mental impairment, demonstrable by medically acceptable clinical and laboratory diagnostic techniques that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 416.929(b); accord Gallagher v. Schweiker, 697 F.2d 82, 84 (2d Cir. 1983). When a medically determinable impairment exists, objective medical evidence must be considered in determining whether disability exists, whenever such evidence is available. 20 C.F.R. § 416.929(c)(2). If the claimant's symptoms suggest a greater

restriction of function than can be demonstrated by objective medical evidence alone, consideration is given to such factors as the claimant's daily activities; the location, duration, frequency and intensity of pain; precipitating and aggravating factors; the type, dosage, effectiveness, and adverse side-effects of medication; and any treatment or other measures used to relieve pain. 20 C.F.R. § 416.929(c)(3); see SSR 96-7p, (July 2, 1996), 1996 WL 374186, at *7. Thus, it is well within the Commissioner's discretion to evaluate the credibility of Plaintiff's testimony and render an independent judgment in light of the medical findings and other evidence regarding the true extent of symptomatology. Mimms v. Sec'y, 750 F.2d 180, 186 (2d Cir. 1984); Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y. 1995).

Therefore, "[i]f the ALJ decides to reject subjective testimony concerning pain and other symptoms, he must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his determination is supported by substantial evidence." Brandon v. Bowen, 666 F.Supp. 604, 608 (S.D.N.Y. 1987) (citing, inter alia, Valente v. Sec'y of HHS, 733 F.2d 1037, 1045 (2d Cir. 1984); footnote omitted).

Here, the ALJ he also set forth a detailed discussion of the evidence in reaching the conclusion that Plaintiff's statements regarding his symptoms and limitations were not credible to the

extent alleged. Namely, Plaintiff's daily activities and stated hobbies belied Plaintiff's allegations of total disability. T. 26-33, 58, 199, 203, 323, 327, 436, 438. The ALJ pointed out that although Plaintiff alleged a disability onset date of January 1, 2000, the medical records indicated that he did not seek treatment for his impairments until September 6, 2007, and further noted a subsequent year-and-a-half gap between medical appointments. T. 27-28. Plaintiff's non-compliance with physical therapy further casts doubt upon his subjective complaints of pain.[2] T. 29.  The ALJ went on to discuss how, although Plaintiff's left shoulder and neck pain were established by the evidence of record, his remaining complaints, including those affecting his lower extremities, were unsubstantiated by the medical record. T. 31. Plaintiff alleges that the ALJ simply overlooked Plaintiff's testimony that he spends most days lying on the couch (Pl. Reply Mem. (Dkt.#11) 10), however, the Court notes that special deference is afforded to the ALJ, who had the opportunity to observe the witness' demeanor while testifying. See Yellow Freight Sys. Inc. v. Reich, 38 F.3d 76, 81 (2d Cir. 1994).

---

[2] Though Plaintiff suggests that his failure to regularly attend physical therapy appointments was because he "did not drive," (Pl. Mem. 16, T. 58) the record indicates Plaintiff's inability to drive was not due to his allegedly disabling symptoms, but because his driver's license was lost to DWI proceedings. T. 201, 321.

It is important to note that "disability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment. Otherwise, eligibility for disability benefits would take on new meaning." Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir. 1983). The Court therefore finds that the ALJ's credibility determination is proper as a matter of law, and is supported by substantial evidence in the record.

**D.   VE Testimony**

Plaintiff also argues that the ALJ erred in relying on the VE's testimony because it was based on an incomplete hypothetical. Pl. Mem. 20.

For the opinion of a VE to constitute substantial evidence, the hypothetical questions posed to the VE must include all of the claimant's limitations that are supported by medical evidence in the record. See Aubeuf v. Schweiker, 649 F.2d 107, 114 (2d Cir. 1981) (a "vocational expert's testimony is only useful if it addresses whether the particular claimant, with his limitations and capabilities, can realistically perform a particular job"); see also Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002) ("A hypothetical question posed to a vocational expert must reflect all of a claimant's impairments....") (internal citations and quotation marks omitted). If a hypothetical question does not include all of

a claimant's impairments, limitations and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability. <u>Melligan v. Chater</u>, No. 94-CV-944S, 1996 WL 1015417, at *8 (W.D.N.Y. Nov. 14, 1996).

In determining Plaintiff's RFC, the ALJ evaluated the complete record, including both medical and non-medical evidence, and afforded partial weight to the consultative examiner's assessed physical limitations. In doing so, she determined that Plaintiff could never push or pull with the left arm; could only occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; occasionally stoop; never reach or overhead reach with the left arm; and only occasionally handle and finger objects. T. 32. Thus, the RFC determination accommodates his established left arm pain. His diagnoses of degenerative disc disease, multilevel spondylosis, and facet osteoarthritis did not preclude him from performing light work with the aforementioned limitations. The treatment notes show that although Plaintiff had a reduced range of motion in his left shoulder, he had full strength in his upper extremities and was neurologically intact, had full digital motion and full range of motion in his hands bilaterally, normal gait, full range of motion in his lumbar spine, and a negative straight leg raising test. Further, Plaintiff had full range of motion of his right shoulder and full range of his elbows, forearms, and wrists bilaterally. He

had full grip strength bilaterally and full strength in his lower extremities. T. 251, 268, 329. The objective findings thus support the ALJ's assessed limitations. In contrast, Dr. Leone's assessment of significant limitations in reaching, handling, and fingering was inconsistent with the aforementioned evidence, as well as with x-rays of his right hand and left shoulder. T. 251, 306. As such, the ALJ properly determined Plaintiff's RFC in this case, which is supported by substantial evidence in the record.

Because the hypothetical questions were based upon an RFC that realistically and accurately described Plaintiff's limitations, the VE's testimony provided substantial evidence to support the finding of no disability. See Christina v. Colvin, No. 12-CV-963, 2014 WL 1279035 (W.D.N.Y. Mar. 27, 2014).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt.#9) is denied, and the Commissioner's cross-motion for judgment on the pleadings (Dkt.#8) is granted. The Complaint is dismissed in its entirety with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca

MICHAEL A. TELESCA
United States District Judge

Dated:    Rochester, New York
          November 17, 2014

25